UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

KENNETH STEFFE,

         Plaintiff,

v.

CAROLYN W. COLVIN,

         Defendant.

Case No. 17-cv-04315-LB

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: ECF Nos. 18, 22

**INTRODUCTION**

    Plaintiff Kenneth Steffe seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act.[1] He moved for summary judgment;[2] the Commissioner opposed the motion and filed a cross-motion.[3] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument. All parties consented to magistrate-judge jurisdiction.[4] The court grants the plaintiff's motion and remands for further proceedings.

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 18.

[3] Cross-Mot. – ECF No. 22.

[4] Consent Forms – ECF Nos. 9, 11.

**STATEMENT**

## 1. Procedural History

On January 11, 2012, Mr. Steffe, born on February 6, 1966 and then age 45, filed a claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, alleging depression, anxiety, lower-back pain, personality disorder, hepatitis C, and degenerative-disc disease.[5] He previously filed a claim for SSI on March 8, 2010.[6] He alleged an onset date of August 1, 2008.[7] The Commissioner denied his SSI claim initially and upon reconsideration.[8] Mr. Steffe timely requested a hearing on April 10, 2013.[9]

Mr. Steffe attended hearings on December 3, 2014 and on August 27, 2015 by telephone before Administrative Law Judge Major Williams, Jr. (the "ALJ").[10] The ALJ issued an unfavorable decision on January 25, 2016.[11] The Appeals Council denied Mr. Steffe's request for review.[12] Mr. Steffe timely filed this action on July 28, 2017[13] and moved for summary judgment.[14] The Commissioner opposed the motion and timely filed a cross-motion for summary judgment.[15] Mr. Steffe filed a reply.[16]

---

[5] Administrative Record ("AR") 19–20; 62.

[6] AR 53.

[7] AR 20.

[8] AR 53, 62, 83 (determinations on SSI claim); *see also* AR 106–14 (initial denial letter); AR 115–18 (request for reconsideration); AR 120–24 (second denial letter).

[9] AR 125–26.

[10] AR 16, 42. The ALJ's opinion suggests that Mr. Steffe did not appear at the December 3 hearing, AR 87, but the transcript shows that Mr. Steffe testified by telephone at both hearings because he did not have identification to allow entry into the federal building. AR 16, 42.

[11] AR 84.

[12] AR 1.

[13] Compl. – ECF No. 1.

[14] Mot. – ECF No. 18.

[15] Cross-Mot. – ECF No. 22.

[16] Reply – ECF No. 23.

## 2. Summary of Administrative Record and Administrative Findings

### 2.1 Medical Records

#### 2.1.1 Southeast Lancaster Health Services — Treating

Mr. Steffe received chiropractic treatment for back pain from January through September 2009 from Lawrence Withum, D.C., Larry Widmer, D.C., and Rodney Hostetter, a physician assistant-chiropractor.[17] Mr. Steffe had "some restricted cervical range of motion" with "pain to palpation" and good range of motion in the back with no signs of a limp or a positive straight leg raise.[18] Medical imaging revealed "mild degenerative changes."[19] Mr. Steffe reported that he was mentally somewhat anxious but got out more and enjoyed his community-service job.[20]

#### 2.1.2 Del Norte Clinics, Inc. — Treating

The record shows visits in April, May, June, and July 2010 and January 2011.[21] In April 2010, Mr. Steffe saw Charles P. Vaclavik, D.O., Linda Morrison-Ory, FNP, and Abdullah Al-Dwairi, M.D. for back pain, a cough with green sputum, and hepatitis C.[22] Dr. Al-Dwairi reported that Mr. Steffe's chronic hepatitis C had an "exceedingly high" viral count of 149,250 and advised him to get immediate treatment for it, but Mr. Steffe deferred interferon treatment and other western medicine for an alternative medicine from Switzerland.[23] Dr. Al-Dwairi noted that a previous liver biopsy indicated "grade 3, stage 0 liver disease."[24] The records reflect that in July 2010, another doctor agreed to provide Mr. Steffe with marijuana for his diagnosed back pain.[25] In January 2011,

---

[17] AR 571, 575, 577, 583.

[18] AR 572, 575.

[19] AR 574.

[20] AR 572. The medical record also reflects treatment at Lancaster General Hospital during this time period. AR 427–89, AR 528–32, AR 534–35. Other records show Mr. Steffe's hepatitis C and his back problems. AR 536–37, AR 657.

[21] AR 642–651.

[22] AR 643–57.

[23] AR 647, 650.

[24] AR 650, 659.

[25] AR 647.

United States District Court
Northern District of California

Dr. Vaclavik diagnosed Mr. Steffe with acute bronchitis, acute sinusitis, and chronic lower-back pain.[26]

### 2.1.3 Omar Colon M.D. — Examining

In April 2010, Mr. Steffe saw Omar Colon, M.D.; his chief complaint was right-buttock pain going down to the right leg.[27] Dr. Colon gave Mr. Steffe a comprehensive neurological evaluation, evaluated Mr. Steffe's range of motion in areas such as spine, joints, and extremities, and concluded that Mr. Steffe's impairments would not "impose any limitations for 12 continuous months" and that he had "no limitations" for "manipulative . . . [and] workplace environmental activities."[28] Mr. Steffe reported that Vicodin and Zyban were his only medications.[29]

### 2.1.4 Jack Latow, Psychologist — Examining

In May 2010, Mr. Steffe saw Jack Latow, Ph.D., a psychologist, for a psychological evaluation.[30] Dr. Latow administered the Complete Psychological Evaluation, Wechsler Adult Intelligence Scale-III, Wechsler Memory Scale-IV, Trails A and B, and Bender Visual-Motor Gestalt cognitive tests.[31] Mr. Steffe said that he could perform self-care, including bathing independently.[32] Mr. Steffe reported that he had used LCD, cocaine, and methamphetamine in the 1980s but medicated only with marijuana in 2010.[33] Dr. Latow's diagnostic impressions were as follows: Axis I: "polysubstance abuse in full sustained remission" and cannabis dependence; Axis II: average intellectual function; Axis III: deferred to medical evaluation; Axis IV: homelessness; and Axis V: a global assessment of functioning ("GAF") of 50.[34] Dr. Latow nonetheless opined

---

[26] AR 646.

[27] AR 538.

[28] AR 538–41.

[29] AR 538.

[30] AR 559–64.

[31] AR 559.

[32] AR 561.

[33] AR 560.

[34] AR 563. A GAF score purports to rate a subject's mental state and symptoms; the higher the rating, the better the subject's coping and functioning skills. *See Garrison v. Colvin*, 759 F.3d 995, 1002 n.4

that Mr. Steffe was capable of performing simple, detailed, and complex tasks, being trained, responding to supervision, managing the pace, changes, and stresses of a normal workday, managing his own funds, and getting along with other people.[35]

### 2.1.5 Highlands Hospital — Treating

The medical-treatment records show treatment from March 2011 to June 2012.[36] In March 2011, Mr. Steffe visited Highland Hospital after he was assaulted with a pipe to his back.[37] His doctors, through various exams, diagnosed Mr. Steffe with a transverse process fracture with minimal displacement and mild spondylosis.[38] The doctors concluded that no surgical intervention was necessary, although he needed good pain-control medication, and he was able to walk well a month later.[39] Mr. Steffe tested positive for cocaine and amphetamine use and was diagnosed with substance abuse in 2011, and he reported using marijuana three to four times daily in 2012.[40]

### 2.1.6 Katherine Wiebe, Psychologist — Examining

In September 2012, Mr. Steffe saw Katherine Wiebe, Ph.D., a psychologist at Alameda County Behavioral Health Care Services, for a psychological evaluation that lasted "2.25 hours" and that included the following tests: Clinical Interview, Repeatable Battery for the Assessment of Neuropsychological Status-Form A, Mini Mental State Examination (MMSE), Trail Making A and B, Clock Drawing Task, Barona Estimate (IQ), Mental Status/Psychiatric Symptoms Sheet, and Symptom Checklist-90-Revised (SCL-90-R).[41] Among other background facts, Mr. Steffe reported that he used medical marijuana almost daily and also used hashish for pain and anxiety, that he had been using marijuana since he was fourteen years old (although he now had a

---

(9th Cir. 2014) ("[A] GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'").

[35] AR 564.

[36] AR 717.

[37] AR 726.

[38] AR 722–29.

[39] AR 726–27, 734.

[40] AR 721, 731.

[41] AR 753–54, 758.

prescription for it), and that he was concerned that the marijuana could be contributing to his memory problems.[42] He reported that he used cocaine about twice a year, did not like to drink, and previously used "all kinds of psychedelics" starting in 1985 but stopped for ten years and now used hallucinogens "about five or six times this year" as "more a spiritual, not recreational kind of thing. . . ."[43] Dr. Wiebe diagnosed Mr. Steffe as follows:

> The results of the assessment indicate that Mr. Steffe likely has: Generalized Anxiety Discord; Major Depressive Disorder, Recurrent, Moderate; He evinces Paranoid Personality Traits; Histrionic Personality Traits; Avoidant Personality Traits; and Negativistic (Passive Aggressive) Personality Traits. He has a rule out for Posttraumatic Stress Disorder, given symptoms that he defensively evaded to address, until he was on his way out of the assessment office. He has a rule-out for Cannabis Dependence. . . . [Mr. Steffe] reported a long history of using cannabis; during which time he has likely been self-medicating personality and psychiatric disorder symptoms that are primary for him. Mr. Steffe requires medical and psychiatric treatment . . . . He is likely to be debilitated in his functioning for at least the next year.[44]

The diagnosis summary reflects the following limitations: (1) severe limitations in attention, concentration, and short-term memory, and (2) moderate limitations in long-term memory, motor/praxis, judgment/insight, executive functioning, ADL's,[45] and social functioning.[46] Dr. Wiebe gave him a GAF of 41.[47] Dr. Wiebe noted mild impairments in visual/spatial/constructional functioning and an overall normal assessment for language and intellectual functioning.[48] Dr. Wiebe concluded that Mr. Steffe's psychiatric and personality-disorder systems combined with his cognitive and medical problems made him easily distracted, with a low frustration tolerance and

---

[42] AR 756, 763.

[43] AR 757.

[44] AR 763.

[45] ADL means activities of daily living. *Sheaffer v. Colvin*, No. ED CV 13-00724-VBK, 2014 WL 111359, at *2 (C.D. Cal. Jan. 9, 2014).

[46] AR 753.

[47] *Id.*

[48] AR 763.

trouble attending to and persevering in tasks.[49] "These would make it difficult for him to accomplish tasks in a regular work environment and to meet the demands of a regular work schedule."[50] In the assessment form, she marked "Yes" to the question about whether Mr. Steffe's mental-health conditions prevented him from working,[51] and marked "No" for "Drug Abuse."[52]

### 2.1.7 C. Arpaci, Psychologist — Examining

In February 2013, Mr. Steffe saw C. Arpaci, Psy.D., a psychologist, for a comprehensive mental-status evaluation.[53] Dr. Arpaci reported that Mr. Steffe "appeared to have had no formal mental health treatment or medications."[54] Mr. Steffe reported that he was a daily marijuana user and a recreational user of other drugs such as mushrooms, and he did not feel his mental-health issues were a big deal.[55] In his DSM-IV diagnosis, Dr. Arpaci diagnosed Mr. Steffe in Axis I with cannabis dependence, anxiety disorder NOS, and "Rule out polysubstance dependence," and in Axis II, "Rule out personality disorder."[56] The Axis III diagnosis included Mr. Steffe's medical issues (such as his hepatitis C), and the Axis IV diagnosis identified Mr. Steffe's problems with housing, occupation, finances, forensic stressors, and access to healthcare.[57] In his Axis V diagnosis, Dr. Arpaci assigned Mr. Steffe a GAF of 50.[58] In a section titled Discussion/Prognosis, Dr. Arpaci noted that Mr. Steffe "appeared to have multiple medical complaints beyond the scope of this evaluator to assess. . . [and] appeared to have some anxious symptoms, difficult to evaluate with substance use. [He] is homeless and would likely have difficulty maintaining regular work."[59]

---

[49] *Id.*

[50] *Id.*

[51] AR 770.

[52] *Id.*

[53] AR 773.

[54] AR 774.

[55] AR 774–75.

[56] AR 776.

[57] *Id.*

[58] *Id.*

[59] *Id.*

In his Functional Assessment/Medical Source Statement, Dr. Arpaci found the following: (1) Mr. Steffe could likely benefit from assistance managing funds due to his substance use; (2) Mr. Steffe's "ability to perform simple and repetitive tasks as well as detailed and complex tasks appeared impaired;" (3) his ability to accept instructions from supervisors and interact with coworkers and the public appeared moderately to severely impaired; (3) his "ability to perform work activities on a consistent basis without special or additional instruction would likely need highly independent work in an independent setting[;] [t]he claimant would likely require substance abuse treatment and counseling to persist in a work environment"; (4) his "ability to maintain regular work attendance in the workplace, complete a normal workday/week without interruption from a psychiatric condition appeared moderately to severely impaired"; and (5) his "ability to deal with stress in the workplace appeared moderately to severely impaired."[60]

### 2.1.8    Jenna Brimmer, M.D. — Examining

In February 2013, Mr. Steffe saw Jenna Brimmer, M.D. for a comprehensive internal-medicine evaluation.[61] Among his other medical issues (such as his back issues and hepatitis C), Mr. Steffe reported that he smoked marijuana three to five times daily, used psychedelics, and did not take other medication.[62] Dr. Brimmer noted that Mr. Steffe smelled vaguely of marijuana and that his hair was somewhat disheveled.[63] Based on her examination, Dr. Brimmer diagnosed Mr. Steffe with low-back pain without objective abnormalities, hepatitis C virus infection without acute or chronic liver disease, and ongoing marijuana and psychedelic substance abuse.[64] She assessed that outside of some environmental and workplace restrictions related to his substance abuse (e.g., operating heavy equipment or driving), Mr. Steffe did not have any exertional limitations in his capacity to stand or walk, to lift or carry, or to engage in postural or manipulative activities.[65]

---

[60] AR 776–77.

[61] AR 779.

[62] AR 779–80.

[63] AR 780.

[64] AR 782.

[65] *Id.*

### 2.1.9 Ted Aames, Psychologist — Treating

In 2015, Mr. Steffe saw Ted Aames, Ph.D., a licensed psychologist at Alameda County Behavioral Mental Health Care Services, for treatment for depression, anxiety, sleep disturbance, and somatic ailments.[66] During his first two visits on January 13 and 22, 2015, Mr. Steffe reported his anxiety, sleep issues, and recent emergency-room visit for difficulty breathing and a persistent cough.[67] Dr. Aames observed Mr. Steffe's poor grooming, anxiety, restlessness, and fatigue, conducted an initial assessment and clinical interview, and referred him to a social worker.[68]

During the first visit, Dr. Aames referred Mr. Steffe for a medication evaluation, but Mr. Steffe declined on the ground that he was opposed to the pharmaceutical industry.[69] He reported severe neck and back pain.[70] During the second visit, Mr. Steffe reported that he was not on any medication, had previously attended Alcoholics Anonymous and Narcotics Anonymous, had used marijuana and cocaine in the past, and was currently using marijuana to "self-medicate" for anxiety, depression, and rage.[71] Mr. Steffe reported "spontaneous" suicidal ideation without intent, plan, or self-harm effects.[72] Dr. Aames suggested seeking medical care "straight away" and connected him with the social worker to help.[73] Dr. Aames's January 22 assessment identified Mr. Steffe's lack of a permanent home, his difficulties with education/employment/daily/social activities, his lack of an ability to establish and maintain relationships including social-support systems, his inability to manage his physical and mental hygiene and manage medications, his repeated presence of psychotic symptoms or suicidal ideations, and his psychiatric history of substantial functional impairment of symptoms (including the observation that without mental-

---

[66] AR 817–26.

[67] AR 817–18.

[68] *Id.*

[69] AR 817.

[70] AR 818.

[71] AR 820–22.

[72] AR 819.

[73] *Id.*

health services, there was a "high risk of recurrence to a level functional impairment").[74] Dr. Aames provided the following supporting comments for his assessment:

> Mr. Steffe's mental illnesses and substantial psychological stressors, including homelessness, medical chronic medical problems, and physical trauma, are significantly impairing his ability to effectively manage his daily functioning. He requires a stable living environment and ongoing support to reduce the overall frequency, intensity, and duration of his psychiatric symptoms; maintain/increase his functional stability; and reduce risk of decompensation and/or client requiring a higher level of care. Due to the acuity and chronicity of his psychiatric symptoms, his mental health condition seemingly could not be exclusively treated by physical health care or a lower level of care until his more pressing and acute difficulties are adequately stabilized. He reported a long history of dependence on others for assistance with ADLs and shelter, saying "I feel helpless; I get frustrated with the situation I am in. I don't even care about my own future anymore. I tried to get good but I stopped doing that because I could never get anything done."[75]

The psychological-assessment form that is part of the January 22 evaluation reflected Mr. Steffe's report that he reduced his alcohol consumption at age 23 after he was diagnosed with hepatitis C to a "beer now and then" and that "he uses cannabis to 'self-medicate' for anxiety, depression, and rage saying, 'It stops me from ripping my hair out.'"[76]

On February 5, 2015, Mr. Steffe had a third session with Dr. Aames.[77] Dr. Aames's report reflected his evaluation that Mr. Steffe "evidenced anxiety, dejection, worthlessness, and panic."[78] He scheduled a follow-up appointment in two weeks and diagnosed him with a GAF of 41.[79] Dr. Aames filled out a Mental Impairment Questionnaire with a DMS V diagnosis of MDD, Anxiety DO NOS, and Personality DO NOS, with clinical findings of "persistent/fluctuating depressant mood, anxious distress, temper outbursts manifested verbally (e.g. verbal rage), suicidal ideation, worthlessness, sleep disturbance, diminished ability to concentrate, dissociation under stress" with

---

[74] *Id.*

[75] *Id.*

[76] AR 821.

[77] AR 826.

[78] *Id.*

[79] AR 826–27.

conditions to last at least twelve months.[80] Dr. Aames checked "no" in response to whether "the patient's impairments [are] caused by substance intoxication/dependence/withdrawal"[81] and did not check the box for substance dependence.[82] The report also contained sections on impairment of mental abilities and aptitudes needed for work (unskilled, semiskilled, skilled, and particular types of jobs) and functional limitations and reflected Dr. Aames's assessments, including mild, moderate, marked, and extreme limitations.[83] Among other things, Dr. Aames found that Mr. Steffe had a "pain/depression cycle: pain worsens [symptoms] of depression and resulting increased depression worsens feelings of pain" which causes him to be absent from work, on average, more than four days per month.[84]

### 2.1.10   John M. Dusay: Psychiatrist — Non-Examining

In February 2015, John M. Dusay, M.D., a consulting psychiatrist (who reviewed Mr. Steffe's medical files but did not treat or examine Mr. Steffe),[85] gave a medical-source statement and later testified before the ALJ in August 2015.[86] Dr. Dusay found that Mr. Steffe had no limitations in his ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.[87] Dr. Dusay found that based on his anxiety, Mr. Steffe had moderate difficulties in his ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to

---

[80] AR 827. MDD is Major Depressive Disorder, and DO is Disorder. *Hughes v. Jansen*, No. 211-CV-1856-KJM-EFB P, 2017 WL 1166157, at *1 (E.D. Cal. Mar. 28, 2017); *Peterson v. Hubbard*, No. 215-CV-0689-KJM-KJN P, 2017 WL 698280, at *10, 11 (E.D. Cal. Feb. 21, 2017), certificate of appealability denied, No. 17-16326, 2017 WL 9732425 (9th Cir. Dec. 15, 2017).

[81] *Id.*

[82] AR 828.

[83] AR 829–30.

[84] AR 827.

[85] AR 812.

[86] AR 23.

[87] AR 809.

usual work situations and to change in a routine work setting.[88] Dr. Dusay noted that Mr. Steffe

might have some fatigue due to hepatitis C and might be impaired for manual labor because of his

low-back pain, and Mr. Steffe's chronic, substantial marijuana use and perhaps other substances

might contribute to his impairments.[89]

Dr. Dusay also testified at the AL hearing. He said that Mr. Steffe had "basically rejected

psychiatric treatment."[90] Dr. Dusay explained that marijuana is used for and helps with anxiety

from time to time, but when people smoke marijuana on a daily basis over a long period of time,

"it seems to sap motivation to get things done and that can, of course, mock depression."[91] He

said, "I don't know whether or not the cannabis is substantive. It certainly is a very major part."[92]

He said he did not think polysubstance abuse was occurring.[93] Dr. Dusay testified that hepatitis C

itself can cause symptoms of depression and fatigue.[94] He also testified that if the ALJ accepted

Dr. Aames's and Dr. Wiebe's medical statements, Mr. Steffe would meet the listing under 12.04,

affective disorder.[95] This conclusion was subject to Dr. Dusay's testimony that he did not see a

cannabis diagnosis in Dr. Aames's and Dr. Wiebe's reports.[96] He testified that Psilocybin "can

cause hallucinations in people. It is used in certain rituals and things with — in the old days with

American Indians and others, they've used it as a spiritual thing. It's a chemical. It's not an

approved treatment or anything, but it's a drug that's been around for many, many years, probably

centuries."[97]

---

[88] AR 810.

[89] *Id.*

[90] AR 22.

[91] AR 23.

[92] *Id.*

[93] *Id.*

[94] AR 24.

[95] *Id.*

[96] AR 23.

[97] AR 35.

### 2.1.11 Oak-New Hospital — Treating

In May 2015, Mr. Steffe went to Oak-New Hospitals for neck and shoulder pain.[98] Imaging of the cervical spine and right shoulder showed mild degenerative changes.[99] He exhibited "minimal tenderness over the right shoulder" with full strength and tenderness of the neck with an otherwise normal gait, motor, and sensation.[100]

### 2.1.12 Adam Trotta, M.D. — Treating

In June 2015, Mr. Steffe saw Adam Trotta, M.D., for pain and hepatitis C and for laboratory tests.[101] The report states: "uses drugs about once a week — cocaine, LSD, or marijuana."[102] Dr. Trotta noted that Mr. Steffe still had not received treatment for his hepatitis C.[103]

## 2.2 Mr. Steffe's Testimony

On December 3, 2014, Mr. Steffe attended his first hearing by telephone because he did not have proper identification to enter a federal building.[104] He testified that he was "working for a truck driving transfer" back in 1999 when he made $8,027.[105] He said he had the job for "about seven or eight months."[106] He was "hired on the spot" for the job.[107] He was homeless at the time.[108]

On August 27, 2015, Mr. Steffe again attended his second hearing by telephone and testified that he had problems in school and did not continue school after eight grade because he was

---

[98] AR 837–45. The record includes the names of four medical professionals: Richard Knight, M.D.; Joshua Long, R.N.; William Hendrix, L.V.N.; and Krammie Chan, M.D.

[99] AR 844–45.

[100] AR 842–43

[101] AR 863.

[102] AR 864.

[103] *Id.*

[104] AR 44.

[105] AR 48.

[106] *Id.*

[107] AR 49.

[108] AR 50.

kicked out for not doing homework.[109] The school "thought [Mr. Steffe] had a short fuse . . . [and] told [Mr. Steffe that he] had a learning disability and that's why they put [him] in separate classes too." Mr. Steffe said he "can't read real fast . . . . for one it's, you know, it gives [him] headaches if [his] glasses aren't proper . . . . [and that he] want[s] to . . . sleep all the time when he feels depressed."[110] He testified that he had trouble with authority figures, trouble sleeping, trouble remembering appointments, difficulty around groups of people, trouble finishing things, and panic attacks.[111] He reported he had "two smashed vertebrae" and an abnormally straight neck, as well as "numbing all through the side now. . . . [he] can't even lift [his left arm] up to, you know, do anything with it without severe pain."[112] He testified that his left arm pain was because of "nerve damage" causing him trouble doing daily things like going to the bathroom in the morning because it's really painful.[113] He continued, "It was caused by these bike accidents I think, but I — that's why I'm going to these specialists now I've got appointments with – and for my liver, another thing, they said now that they have a cure."[114] He explained that he did not want to get Interferon treatment for his hepatitis C because he "found out that it was a really, really bad toxin for your body. Basically, that's what the Interferon does. It kills everything in your body so your body can try to start new. So that — [he] didn't have any interest in that."[115] He continued, "the doctor also said that my blood genotype was the number one resilient – most resilient against treatment. So that's — in the past, that's why, but now they have told me that there is a cure for

---

[109] AR 18, 25.

[110] AR 26.

[111] AR 27–28, 31.

[112] AR 29.

[113] AR 30.

[114] AR 29.

[115] AR 29–30.

[h]epatitis C and that my MediCal is — can cover."[116] He explained that his left arm pain was because of a pinched nerve.[117]

He testified that he had trouble using the restroom and trouble focusing and concentrating because he "think[s] of too many things all at once . . . [and] can't focus on one thing long enough to get a completion out of it sometimes unless [he] got . . . guidance and direction for that."[118] He used cannabis to treat his symptoms of anxiety and depression.[119] When the ALJ asked whether Mr. Steffe thought his symptoms would go away if he were to stop using cannabis, Mr. Steffe answered, "I would probably be worse. I would probably be a nervous wreck. And if you want to call it dependency, I think I'd rather be dependent on cannabis than taking Vicodin or other pharmaceutical drugs that I've watched my friends over the years die from a lot sooner."[120] He continued, "I only take [Ibuprofen] when it's really bad, you know, because . . . if they would tell me to take it as they have it prescribed on the chart my liver would be dead from all that."[121] Mr. Steffe testified that "when [he] found out that [he] had [h]epatitis C, [he] quit drinking alcohol" because it would destroy his liver.[122] He said he has a "big paranoia about pharmaceuticals. The pharmaceutical companies are out to get me. . . . I've watched . . . my friends over the years get hooked on pharmaceutical drugs that the doctor prescribed to them."[123] He testified that he used Psilocybin "not [as] a recreational thing, it's more of a spiritual thing for me. It's like me — you know, this is the way I commune with my God . . . ."[124]

---

[116] AR 30.

[117] *Id.*

[118] AR 30–31.

[119] AR 32.

[120] *Id.*

[121] AR 33.

[122] *Id.*

[123] AR 34.

[124] *Id.*

## 2.3 Vocational Expert ("VE") Testimony

Vocational Expert David Van Winkle testified at the hearing on August 27, 2015.[125] The ALJ posed a hypothetical:

> I want you to consider a hypothetical individual with the claimant's vocational history who would be capable of performing simple and some detailed tasks at a medium — at a full range of medium exertional level. Would such a claimant be capable of performing work in the national or local economy? . . . Could you give me an example of some jobs?[126]

Mr. Van Winkle responded to the question about work performance capability:

> Yes, . . . One position would be that of dishwasher, which is medium, unskilled work, at SVP 2. The DOT number for dishwasher is 318.687-010, approximately 500,000 jobs nationally. Also at the medium unskilled level . . . would be the position of courtesy clerk or bagger. The DOT is 920.687-014, medium, unskilled as I said, SVP 2, and approximately 150,000 jobs nationally. . . . A third would be warehouse laborer. The DOT is 922.687-058 and that's medium, unskilled at SVP 2, approximately 40,000 jobs nationally.[127]

The ALJ then added to the hypothetical:

> Let's take the same hypothetical, but add to it that the claimant, due to his limitations in social functioning and his overall mental health functioning, would likely be off task 20 percent of the time in an eight-hour workday and he would likely be absent from work more than two days a month. Would such a claimant be capable of performing that work that you just gave me or any other work?[128]

Mr. Van Winkle answered "no."[129]

## 2.4 Administrative Findings

The ALJ followed the five-step sequential evaluation process to determine whether Mr. Steffe was disabled and concluded he was not.[130]

At step one, the ALJ found that that Mr. Steffe had not engaged in substantial gainful activity since his application date of January 2012.[131]

---

[125] AR 38.

[126] AR 38–39.

[127] AR 34.

[128] *Id.*

[129] AR 40.

[130] AR 89.

[131] *Id.*

At step two, the ALJ found that Mr. Steffe had the following severe impairments: "marijuana dependence; polysubstance dependence — methamphetamine and cocaine; anxiety; attention deficit hyperactivity disorder; depression; personality traits; hepatitis C; degenerative disc disease of the lumbar and cervical spine; and remote history of head trauma."[132]

At step three, the ALJ found that Mr. Steffe had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[133] Specifically, "paragraph A" criteria were satisfied because his mental impairments, including the substance use disorders, meet listings 12.04 affective disorder, 12.06 anxiety related disorders, and 12.09 substance addiction disorders.[134] "Paragraph B" criteria were also satisfied because his mental impairments cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation.[135] Mr. Steffe's mental impairments included difficulty with the following: "personal hygiene" due to substance use; "getting along with others [] including authority figures"; "[h]e carries a history of criminal conduct including [a] felony;" and difficulties with concentration, insight, judgment, reading, sleeping, coping skills and persistence.[136] "He . . . has had accidents and conflicts related to his substance use."[137] The ALJ found that he was "credible concerning the symptoms and limitations . . . [as] he experiences significant symptoms of depression and anxiety while consistently using marijuana and other drugs."[138]

The ALJ found that if Mr. Steffe stopped using illicit substances, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore he would continue to have a severe impairment or combination of impairments.[139] Specifically, the

---

[132] Id.

[133] Id.

[134] Id.

[135] AR 90.

[136] AR 89–90.

[137] AR 90.

[138] Id.

[139] Id.

United States District Court
Northern District of California

ALJ said, Mr. Steffe "continued to complain of depression and anxiety during periods where it appeared he did not use drugs and alcohol extensively, though the record is not entirely clear regarding how symptomatic he remains when clean and sober."[140]

The ALJ found that if Mr. Steffe stopped using illicit substances, the remaining impairments or combination of impairments would not meet or medically equal any of the impairments in the "paragraph B" criteria.[141] Specifically, there was insufficient evidence to satisfy the pertinent requirements under 1.04 (disorders of the spine), 11.14 (peripheral neuropathies), and 11.18 (cerebral trauma).[142] He would have mild limitations in performing daily activities.[143] He would have moderate difficulties in social functioning but be better able to manage his symptoms and to avoid engaging in conflict.[144] He would have moderate difficulties in concentration, persistence, pace, sleeping, energy, and attention but could manage his condition well enough to perform simple routine and some detailed tasks.[145] He would experience no decompensation episodes if the substance use was stopped.[146]

The ALJ also found that the "paragraph C" criteria would not be satisfied.[147] He had no history of decompensation episodes or inability to function outside a highly supportive living arrangement.[148] There was no evidence of residual-disease process resulting in marginal adjustment such that even a minimal increase in mental demands or change in environment would be predicted to cause Mr. Steffe to decompensate.[149]

---

[140] *Id.*

[141] AR 90–91.

[142] AR 90.

[143] *Id.*

[144] *Id.*

[145] AR 91.

[146] *Id.*

[147] *Id.*

[148] *Id.*

[149] *Id.*

1    At step four, the ALJ determined Mr. Steffe had the residual-functional capacity ("RFC") to

2    perform a full range of work at all exertional levels limited to simple and some detailed tasks if he

3    stopped the substance use.[150]

4    At step five, the ALJ found Mr. Steffe had no past relevant work to examine and so

5    transferability of job skills was not relevant.[151] Mr. Steffe was defined as a younger individual age

6    on the date the application was filed.[152] He had a high school education and can communicate in

7    English.[153] The ALJ found that Mr. Steffe could work as a "dishwasher," "courtesy clerk/bagger,"

8    or "warehouse laborer."[154] The ALJ concluded that the substance abuse disorder was a

9    contributing factor material to the determination of disability because he would not be disabled if

10   he stopped the substance use, and thus he was not disabled.[155]


12                                                    **ANALYSIS**

13   **1. Standard of Review**

14       Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

15   Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set

16   aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or

17   are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

18   586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); 42 U.S.C. § 405(g).

19   "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

20   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

21   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such

22   inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark*

24   [150] *Id.*

25   [151] AR 96.

26   [152] *Id.*

27   [153] *Id.*
     [154] AR 97.

28   [155] *Id.*

United States District Court
Northern District of California

*v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## 2. Applicable Law

A claimant is considered disabled if (1) he or she suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he or she is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

> **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## 3. Application

Mr. Steffe contends the ALJ erred at step four in determining his RFC by (1) discounting or disregarding the medical opinions of the treating and examining psychologists without providing specific and legitimate reasons supported by substantial evidence, (2) discrediting Mr. Steffe without providing clear and convincing reasons supported by the evidence and without considering the entire case record, and (3) finding that drug abuse was a contributing factor material to the determination of disability.[156] The next sections address these contentions.

### 3.1 Whether the ALJ Erred in Evaluating and Weighing Dr. Aames's and Dr. Wiebe's Medical-Opinion Evidence

Mr. Steffe contends the ALJ erred by rejecting the opinions of treating psychologist Dr. Aames and examining psychologist Dr. Wiebe without providing specific and legitimate reasons supported by substantial evidence.[157] This order first discusses the law governing the ALJ's weighing of medical-opinion evidence and then analyzes the medical-opinion evidence under the appropriate standard.

The ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d

---

[156] Mot. – ECF No. 18.

[157] *Id.* at 10.

at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court [also] must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence."[158] *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Social Security regulations distinguish between three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may disregard the opinion of a treating physician, whether or not controverted. *Andrews*, 53 F.3d at 1041. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (internal quotation marks and citation omitted). By contrast, if the ALJ finds that the opinion of a treating physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks and citation omitted); *see also Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (internal quotation marks and citation omitted). The opinions of non-treating or non-examining physicians

---

[158] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, governs based on the date of the ALJ's hearing, August 27, 2015.

United States District Court
Northern District of California

may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ errs, however, when she "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for [her] conclusion." *Garrison*, 759 F.3d at 1012–13.

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)(i)–(ii)) (alteration in original). "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion . . . ." *Id.* (citing 20 C.F.R. § 404.1527(d)(3)–(6)).

### 3.1.1 Dr. Aames

Dr. Aames is a licensed psychologist and therefore is an accepted medical source.[159] He was Mr. Steffe's treating physician at Alameda County Behavioral Health Care Services.[160] His opinion, including his conclusion on the permanency of Mr. Steffe's mental issues, is controverted by Dr. Dusay.[161] The ALJ therefore was required to give specific and legitimate reasons for rejecting his opinion. *See Garrison*, 759 F.3d at 1012.

Mr. Steffe challenges the ALJ's weighing of Dr. Aames's medical opinion in three ways.

---

[159] AR 817.

[160] *Id.*

[161] AR 827, 814.

First, Mr. Steffe argues that the ALJ found that Dr. Aames's medical records did not address Mr. Steffe's drug use when in fact, Dr. Aames's treatment notes acknowledged Mr. Steffe's drug use (at least with regard to his marijuana use).[162] This argument has merit. Specifically, at Mr. Steffe's second visit with Dr. Aames, Dr. Aames wrote in his progress notes "[c]lient reported he uses cannabis to 'self-medicate' for anxiety, depression, and rage saying, 'It stops me from ripping my hair out,'" and Dr. Aames marked "yes" for marijuana use.[163] The third visit and the accompanying psychiatric report did not discuss Mr. Steffe's substance use.[164] After the third visit, Dr. Aames filled out a questionnaire about Mr. Steffe's mental impairments.[165] Dr. Aames circled "No" in answer to the question "are the patient's impairments caused by substance intoxication/dependence/withdrawal."[166] The questionnaire listed three visits with Mr. Steffe under "frequency and length of contact."[167] While his psychiatric report did not discuss Mr. Steffe's drug use, his treatment notes from the second visit did, documenting that Dr. Aames was aware of Mr. Steffe's marijuana use.

Second, Mr. Steffe argues that the ALJ found that Dr. Aames relied only on Mr. Steffe's subjective complaints when in fact, Dr. Aames made objective observations and evaluated Mr. Steffe clinically over the course of several visits.[168] This argument also has merit. Specifically, while Dr. Aames relied partly on Mr. Steffe's subjective reporting, the record shows his assessment of Mr. Steffe and contained his objective observations about and diagnosis of him.[169] That diagnosis was based on a treatment relationship over several visits.[170] In his decision, the

---

[162] Mot. – ECF No. 18 at 11–12; *see also* AR 821.

[163] AR 821–22.

[164] AR 826–31.

[165] AR 827–31.

[166] AR 827.

[167] *Id.*

[168] Mot. – ECF No. 18 at 11–12.

[169] AR 817–31.

[170] *Id.* The Ninth Circuit has noted that "Section 404.1502 neither explicitly forbids nor requires crediting a physician 'treating' status whose patient contact is thus limited. Its language suggests that 'a few times' or contact as little as twice a year would suffice, but it does not state that this frequency

ALJ mistakenly thought that Dr. Aames saw Mr. Steffe only once (a factor the ALJ cited in determining the weight to give Dr. Aames's finding) when in fact the record shows three visits.[171]

Third, Mr. Steffe argues that the ALJ erred by finding that Dr. Aames's opinion was not supported by medical evidence and was inconsistent with the record, including Mr. Steffe's other statements regarding his drug use.[172] In its cross motion, the Commissioner argues that the ALJ properly rejected Dr. Aames's opinion because (a) "Dr. Aames's evaluation [was] questionable largely as there was no discussion of [Mr. Steffe's] ongoing polysubstance abuse," (b) Dr. Aames "provided almost no treatment to [Mr. Steffe] at the time he completed his disability opinion," and (c) Dr. Aames's opinion was "contrary to the objective evidence of record."[173] This argument does not change the court's conclusion.

First, as stated previously, Dr. Aames did consider Mr. Steffe's reported drug use. Whether Dr. Aames considered it sufficiently is for the ALJ to determine in the first instance on remand. Second, despite Mr. Steffe's statement that he wanted to "leave California," at the third visit, Dr. Aames scheduled a follow-up session with Mr. Steffe (though the record does not show whether it took place) to "provide a stabilizing presence in client's life; explore/monitor/reduce overall frequency, intensity, and duration of psychiatric symptoms; maintain/increase functional stability; and reduce risk of decompensation."[174] Dr. Aames also "explored desired outcome/focus of treatment" with Mr. Steffe.[175] Third, while Dr. Aames's findings are contrary to certain findings in the record, notably Dr. Dusay's finding that Mr. Steffe had no limitations in understanding and

---

of patient contact represents a floor. Rather, the standard it applies is that the claimant must have seen 'the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).'" *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035–36 (9th Cir. 2003)

[171] *Compare* AR 95 *with* AR 817–27.

[172] Mot. – ECF No. 18 at 11.

[173] Cross-Mot. – ECF No. 22 at 4–5.

[174] AR 826.

[175] AR 824.

carrying out simple instructions or the ability to make work-related decisions,[176] his findings of major depressive and anxiety disorder align with Dr. Wiebe's findings.[177] *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

Here, the ALJ made findings that were inconsistent with the findings of Dr. Aames, a treating physician (and also, as discussed below, with the findings of an examining doctor). In doing so, the ALJ did not adequately articulate specific and legitimate reasons for discounting Dr. Aames's opinion. The ALJ therefore erred by simply asserting that Dr. Aames's "opinion is neither well supported by the objective medical evidence nor consistent with the record, including the claimant's present admission that he continues to use drugs."[178] *See Garrison*, 759 F.3d at 1012–13. On remand, the ALJ can reassess the weight to give Dr. Aames's opinion in the context of the entire medical record.

### 3.1.2   Dr. Wiebe

Dr. Wiebe, a psychologist, is an accepted medical source and an examining physician at Alameda County Social Services Agency.[179] Her opinion is controverted.[180] The ALJ therefore was required to give specific and legitimate reasons for rejecting her opinion. *See Garrison*, 759 F.3d at 1012.

The ALJ declined to adopt Dr. Wiebe's opinion because "[a]lthough [Mr. Steffe] reported a long history of using marijuana, he denied any alcohol and drug use in 2012. As the record demonstrates, he had been using marijuana, cocaine, and amphetamines. Hence, Dr. Wiebe's conclusion that [Mr. Steffe] possessed marked to extreme limitations as of 2012, is not consistent or supported by the claimant's minimal treatment and his extensive drug use since at least

---

[176] *Compare* AR 809 *with* AR 829.

[177] *Compare* AR 764 *with* AR 827.

[178] AR 95.

[179] AR 769. "Acceptable medical sources include . . . licensed psychologists." *Mack v. Astrue*, 918 F. Supp. 2d 975, 982 (N.D. Cal. 2013); *see also* 20 C.F.R. §§ 416.913(a), 416.913(a).

[180] *Compare* AR 753–70 *with* AR 814.

2010."[181] Mr. Steffe contends that the ALJ's reasoning was factually flawed because Mr. Steffe did report to Dr. Wiebe that he used drugs in 2012.[182] This argument has merit.

Dr. Wiebe specifically marked "No" for "Drug Abuse."[183] She knew Mr. Steffe's history of drug use: he reported use of marijuana almost daily (and hashish) for pain and anxiety, his use of marijuana since age 14, his use of cocaine twice a year, and his use of psychedelic drugs five or six of times a year.[184] Dr. Wiebe also administered diagnostic tests and in her diagnosis, she noted Mr. Steffe's long history of cannabis use to self-medicate.[185] Dr. Wiebe diagnosed Mr. Steffe with major depressive disorder, anxiety disorder, and personality disorders.[186] Her diagnosis was consistent with Dr. Aames's diagnosis.[187]

On remand, the ALJ can reassess the weight to give Dr. Wiebe's opinion in the context of the entire medical record.

### 3.2 Whether the ALJ Erred in Evaluating and Weighing the Credibility of Mr. Steffe's Testimony

Mr. Steffe contends that the ALJ erred by discrediting his testimony.[188] In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id* (internal quotation marks and citations omitted).

---

[181] AR 95–96.

[182] Mot. – ECF No. 18 at 13.

[183] AR 770.

[184] AR 757.

[185] AR 756.

[186] AR 753.

[187] AR 827.

[188] Mot. – ECF No. 18 at 14.

"At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (internal quotation marks omitted). "The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016). Mr. Steffe contends that the ALJ gave two reasons for discrediting his testimony that were not clear and convincing reasons: (1) he failed to reveal the extent of his substance abuse, and (2) he deferred any consistent treatment.[189]

The ALJ found the following about Mr. Steffe's testimony:

> He alleged that he has been unable to work because of his physical and mental impairments. However, he continues to use marijuana and mushrooms, freely explaining that [] he would rather be dependent on marijuana than submit to the pharmaceutical industry. He carries a poor work history, and he has a criminal history that includes possession of marijuana and cocaine []. He did not reveal the extent of his poly substance use during some of the evaluations, thus limiting the examiner's opinion. More significantly, despite the severity of his symptoms and limitations since at least 2009, he has consistently deferred undergoing any consistent treatment, physical, or mental. With the foregoing factors in mind, I have concluded that the claimant's testimony with regard to the severity and functional consequences of his symptoms is not fully credible [].[190]

The ALJ erred by not considering the entire record in finding Mr. Steffe not credible. For example, as discussed above, the record shows that Mr. Steffe revealed his drug use to the treating and examining doctors. Moreover, Mr. Steffe's drug use itself is not a specific or legitimate reason to discredit his testimony. *See Richey v. Colvin*, No. C 12-4988 LB, 2013 WL 5228185, at *19 (N.D. Cal. Sept. 17, 2013) ("[j]ust because [the claimant] used drugs does not mean that his

---

[189] *Id.*

[190] AR 96. The court notes that Dr. Dusay testified that Mr. Steffe had "basically rejected psychiatric treatment." "Failure to seek treatment or follow a prescribed course of treatment" is a valid factor that "an ALJ may consider in weighing a claimant's credibility." *Orn*, 495 F.3d 625, 636. The ALJ can consider this issue on remand.

testimony regarding underlying psychological problems lacks credibility); *but see Ortiz v. Astrue*, No. 11-CV-04285-LHK, 2013 WL 1149805, at *1 (N.D. Cal. Mar. 19, 2013) (an ALJ properly discredited a claimant's testimony because the claimant not only used drugs, but also made inconsistent statements about her drug use). That said, there may be inconsistencies about drug use, and the ALJ can reevaluate the issue on remand in the context of the complete medical record.

As for Mr. Steffe's consistently deferring treatment,[191] the "failure to seek treatment or follow a prescribed course of treatment" is a legitimate factor "in weighing a claimant's credibility" *Orn*, 495 F.3d at 636; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). And Mr. Steffe's statements that he did not like doctors and had a "big paranoia about pharmaceuticals" because his friends became addicted to them are not necessarily valid reasons for failing to seek treatment.[192] *See Lindsay v. Apfel*, No. C 98-0364 MJJ, 1999 WL 1051986, at *1 (N.D. Cal. 1999) (finding that the fear of surgery is not an acceptable reason for rejecting potentially curative treatment). That said, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). *Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 610, 611–12 (9th Cir. 2011) ("[F]ailure to seek treatment . . . is not a clear and convincing reason to reject" evidence where claimant's "failure to seek treatment is explained, at least in part, by [the claimant's] degenerating condition.").

Here, several doctors diagnosed Mr. Steffe with depression, including Dr. Aames, a treating physician, Dr. Wiebe, an examining doctor, and Dr. Dusay, a non-examining physician who was given the "most weight" by the ALJ.[193] Dr. Wiebe concluded that "Mr. Steffe has impairments in judgment, insight and reasoning due to his psychiatric and personality disorder symptoms."[194] Dr. Aames concluded that Mr. Steffe had a "pain/depression cycle: pain worsens [symptoms] of

---

[191] AR 96.

[192] AR 756, 34.

[193] AR 96, 768, 813, 827.

[194] AR 763.

depression and resulting increased depression worsens feelings of pain;" this causes Mr. Steffe to be absent from work, on average, more than four days per month.[195] He also concluded that Mr. Steffe had moderate to extreme limitations in ability to do unskilled work.[196] Dr. Dusay concluded that if Dr. Wiebe and Dr. Aames's opinions were accepted, then Mr. Steffe would meet the listing under 12.04, affective disorder.[197] Progress notes and medical evidence from treating and examining physicians confirm that Mr. Steffe has been diagnosed with anxiety, depression, personality disorder, hepatitis C, and chronic lower-back pain since 2009.[198]

Because the ALJ's discrediting of Mr. Steffe's testimony was based in part on his assessment of the medical evidence, including Dr. Aames's and Dr. Wiebe's evaluations, the court remands on this ground too. The ALJ can reassess Mr. Steffe's credibility on remand in context of the entire record.

### 3.3 Whether the ALJ Erred by Finding That Substance Abuse is a Material Contributing Factor

Mr. Steffe contends that the ALJ erred by finding that his substance use was a contributing factor material to the determination of disability.[199]

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). "Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits 'if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(C)) (alteration in original).

The Ninth Circuit has held that when a Social Security disability claim involves substance abuse, the ALJ must first conduct the five-step sequential evaluation without determining the

---

[195] AR 827, 829.

[196] *Id.*

[197] AR 24.

[198] AR 436, 439, 458, 508, 514, 649, 749, 760, 762, 764, 827.

[199] Mot. – ECF No. 18 at 16.

impact of substance abuse on the claimant. *Bustamante*, 262 F.3d at 954–55. If the ALJ finds that the claimant is not disabled, then the ALJ proceeds no further. *Id.* at 955. If, however, the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation a second time and considers whether the claimant would still be disabled absent the substance abuse. *Id.* (citing 20 C.F.R. §§ ; C.F.R. § 404.1535, 416.935); *Parra*, 481 F.3d. at 747 (under the Social Security Act's regulations, "the ALJ must conduct a drug abuse and alcoholism analysis" to determine "which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." (citing 20 C.F.R. § 404.1535(b)). The Ninth Circuit has stressed that courts must not "fail to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol." *Kroeger v. Calvin*, 2015 WL 2398398, at *10 (N.D. Cal. May 19, 2015) (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998)). "Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." *Id.* The claimant has the burden to prove that the drug or alcohol abuse is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.

Here, following the process outlined in *Bustamante*, 262 F.3d at 954–55, the ALJ made two conclusions with respect to Mr. Steffe's RFC. The ALJ first concluded that if Mr. Steffe's polysubstance abuse were taken into account, Mr. Steffe would be disabled. The ALJ then concluded that if Mr. Steffe abstained from substance use, he could perform positions available in substantial numbers in the national economy such as a dishwasher, courtesy clerk/bagger, or warehouse laborer.[200]

If the ALJ credited the opinions of Dr. Aames and Dr. Wiebe, then — according to Dr. Dusay — Mr. Steffe would meet the listing under 12.04, affective disorder. This conclusion was subject to Dr. Dusay's testimony that he did not see a cannabis diagnosis in Dr. Aames's and Dr. Wiebe's reports.[201] But Dr. Wiebe included a diagnosis of cannabis dependency, and Dr. Aames and Dr. Wiebe both knew about Mr. Steffe's substance use when they formed their diagnoses of

---

[200] AR 89–91, 97.

[201] AR 23.

depression, anxiety disorder, and personality disorders.[202] Moreover, as the court has held, the ALJ did not provide specific and legitimate reasons for discrediting the Aames and Wiebe evidence. As a result, he did not give specific, clear, and convincing reasons for discrediting Mr. Steffe's testimony because his medical facts were wrong. In turn, the RFC assessment is built on the ALJ's assessment at the prior steps in the sequential-evaluation process. The court thus remands on this ground too. The ALJ can reassess the issue on remand in light of the full record.

## CONCLUSION

The court grants Mr. Steffe's summary-judgment motion, denies the Commissioner's cross-motion, and remands the case for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: July 26, 2018

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[202] AR 764, 827.